IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | Case No.2:06-mj-79-SRW |
| | ) | |
| SANTO COLEMAN | ) | |

**MOTION TO REVOKE RECOMMENDATION OF DETENTION**
**MOTION TO REOPEN DETENTION HEARING AND**
**MOTION TO SET BAIL AND BRIEF IN SUPPORT**

NOW COMES the Defendant, Santo Coleman, through counsel, and pursuant to 18 U.S.C. § 3145(b), respectfully moves this Honorable Court to set aside the Magistrate Judge's Recommendation of Detention. In support thereof, counsel states as follows:

**FACTUAL HISTORY AND PROCEDURAL BACKGROUND**

On or about August 8, 2006, around 6:30 p.m., an Alabama State Trooper stopped a Ford Focus occupied and owned by Alberto Villarreal for a traffic violation. The trooper obtained consent to search the vehicle and discovered 3 kilos of cocaine in a hidden compartment in rear of the car. Villarreal acknowledged possession of the cocaine and stated that it was destined to a person in Montgomery, Alabama. Villarreal agreed to cooperate with law enforcement officials in furthering the investigation. According to Villarreal he had been receiving instructions telephonically from a person named Rick LNU whom he had met in a bar in San Antonio, Texas. Villarreal said that he was to drive the Ford Focus to the Holliday Inn on the Eastern Boulevard, leave the car in the hotel parking lot and get a hotel room. Villarreal would then wait at the hotel

while person or persons unknown would pick up the Ford Focus, unload the cocaine, and bring the car back to the hotel for Villarreal. Officers watched the Holiday Inn and observed a black Chevrolet pick up truck in the parking lot, later discovered to be owned by Santo Coleman. Officers later observed a man later identified as Harry Jones exit the Waffle House attached to the Holiday Inn and enter Coleman's vehicle. Villarreal and Coleman's truck left the Holiday Inn Parking lot and proceeded down the Eastern Boulevard. Both vehicles drove into the parking lot of the Wyngate Inn and parked. Villarreal exited his vehicle and approached Coleman's vehicle on the passenger side. Neither Coleman nor Jones exited their vehicle in an attempt to take control of Villarreal's vehicle, nor did they make any statements indicating knowledge of the contents of Villarreal's car. There was also no statement made by either party as to the purpose of the meeting in the parking lot. Officers Aponte and Herman who were in plain clothes and in an unmarked vehicle, quickly and abruptly drove near Coleman's vehicle, exited their vehicle and drew their service weapons. Coleman's vehicle sped away from the scene and was discovered later wrecked and abandoned.

Villarreal identified Coleman as the driver and one Harry Jones as the passenger. Jones was arrested that evening. Villarreal allegedly stated that he came to Montgomery two weeks prior to his current trip in preparation for his current trip, although such meeting was never corroborated nor the substance of that meeting. He allegedly met Coleman and Jones on that occasion. No evidence was adduced to corroborate the government's inference that the meeting was to discuss a criminal conspiracy. The Government conceded it did not have evidence of an agreement corroborated by audiotape of Coleman and Villarreal conspiring to possess and distribute cocaine. The Government admitted that it believed that there was an agreement between Villarreal and Coleman because Agent Herman stated that "Coleman met him (Villarreal) at the

2

hotel" pursuant to Villarreal's detail of his alleged instructions.

After hearing of Jones' arrest, Coleman called the United States Marshall and other law enforcement authorities attempting to confirm whether or not a warrant for his arrest had been issued. No such warrant was confirmed by the U.S. Marshall or other law enforcement officials. Moreover, no attempt to serve the warrant at the defendant's known address was done. On the evening of August 24, 2006, Coleman was informed by the undersigned that a warrant for his arrest had been issued. Coleman, through the undersigned, made satisfactory arrangements with the United States Marshall to turn himself in on August 28, 2006, where he did without incident. Coleman was detained and a hearing was set for September 1, 2006.

On September 1, 2006, a detention hearing was held where The United States Government sought the pre-trial detention of the defendant. As grounds for his detention, the Government's motion focused on the following assertions:

- That the defendant was a flight risk;
- That the defendant committed a crime of violence which carried a penalty of more than ten years imprisonment.
- The defendant was a danger to the community
- Obstruction of Justice

At the close of that hearing the Magistrate Judge declined to release the Coleman and held him without bail, pending trial concluding that he was a flight risk and that there were no conditions or combination thereof which would secure his presence at trial.

Coleman moves this court to re-open his detention hearing and set and appropriate bail.

## ARGUMENT AND POINTS & AUTHORITIES

I.     **Mr. Coleman is eligible for bail.**

**A.    The Bail Reform Act of 1984**

Federal law has unequivocally provided that person arrested for a non-capital offense *shall be* (emphasis added) admitted to bail, since the traditional right of the accused to freedom before conviction permits unhampered preparation of defense and serves to prevent infliction of punishment prior to conviction, and presumption of innocence, secured only after centuries of struggle, would lose its meaning unless such right to bail before trial were preserved. Stack v. Boyle, 342 U.S.1 (1951).

Pursuant to the Bail Reform Act of 1984, a person charged with a federal offense *shall be released* on personal recognizance or unsecured bond unless release will not reasonably assure the defendant's presence at future court appearances or will endanger the safety of any person or the community.  See 18 U.S.C. § 3142(b).  In the event the court determines that an individual is a flight risk or a danger to the community, the court *shall release* the person subject to conditions that will assure the individual's appearance and the safety of the community. 18 U.S.C. § 3142(c).[1]  Only after a hearing, and after finding that no condition or combination of conditions will reasonably assure future court appearances or the safety of any other person and the community, shall the magistrate judge enter a detention order.  18 U.S.C. § 3142(e).

It is always the government's burden to persuade and prove to the court either (a) that by a preponderance of the evidence the individual is a flight risk or (b) that by clear and convincing evidence the individual is a danger to the community.  See United States v. Rueben, 974 F.2d

---

[1]    These conditions included: (i) release to a third party custodian; (ii) seeking or maintaining employment; (iii) maintaining or commencing an educational program; (iv) restrictions on personal associations, residences or travel; (v) restrictions on contact with witnesses or alleged victims; (vi) reporting requirements to pretrial services; (vii) compliance with a specified curfew; (viii) no possession of firearms; (ix) restrictions on the use of drugs or alcohol; (x) participation in drug, alcohol, psychological or psychiatric treatment; (xi) and (xii) execution of secured bail bonds;  (xiii) confinement in a community treatment center;  (xiv) the satisfaction of any other condition that is reasonably necessary to assure the safety of any other person and the community.

580 (5th Cir. 1992); <u>United States v. Townsend</u>, 897 F.2d 989, 994 (9th Cir. 1990); <u>United States v. Motamedi</u>, 767 F.2d 1403, 1406-1407 (9th Cir. 1985); <u>United States v. Freitas</u>, 602 F. Supp. 1283 (N.D. Cal. 1985). The court must then determine that there are **no conditions** which would insure the individual's appearance. *Only then can an individual be detained*.

If an individual is detained pursuant to 18 U.S.C. § 3142, pursuant to 18 U.S.C. § 3142 (f)(2) the detention hearing can be reopened if new and material evidence related to the issues of flight risk and danger to the community are presented to the court.[2]

**B.    Mr. Coleman is not a flight risk, and the Government did not prove he was a flight risk by a preponderance of the evidence, and the defendant rebutted the presumption of detention.**

Outside of the statutory presumption that the defendant is detainable, the thrust of the Government's assertion that the defendant is a flight risk is based upon his departure from a parking lot where plain clothed police officers abruptly jumped out of an unmarked vehicle, drew their service weapons, and without a show of authority in an attempt to make an arrest. The Government has not shown authority where pre-accusatory flight from law enforcement, standing alone, is a lawful basis for denial of bail or an indicator of the failure to appear at trial and answer a court order. At worst, such headlong flight would merely amount to the charge of attempting to elude or failure to obey, both of which are misdemeanors and bailable offenses as a matter of law. See Code of Alabama, 1976, Article 1 § 16. Under the Government's theory, pre-

---

[2]    Pursuant to 3142(f):

The hearing may be reopened before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there is a condition of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community.

accusatory flight from police officers is not only an indication, but evidence, that the defendant would in fact abscond from a court order to appear, and thus should be denied bail.  Although the theory is colorful, it is hardly based in logic or sustained by case law.

Nevertheless, flight risks have traditionally been viewed as those individuals who failed to appear in court as directed by orders of the court and/or who had a history of flight, or those individuals who had large sums of money, out of state or international contacts, passports, access to transportation that could allow them to easily flee the jurisdiction.  The defendant does not have a criminal history in state court, or federal court.  Thus the Government could present no evidence regarding the defendant's failure to appear in court or his absconding from the orders of the court or any court which the defendant had dealings.  Nor did the Government suggest or present any evidence that the defendant had large sums of money or contacts that would greatly increase the chances of him absconding from court.

In assessing whether or not a defendant poses a risk of flight, courts generally look to the defendant's ties to the community and the penalties that he or she faces if convicted, as well as the defendant's finances. See <u>Townsend</u>, 987 F.2d at 995.  See 18 U.S.C. § 3142(g)(3)(A).  The relevant community is, of course, the community in which the defendant faces prosecution. In the federal system, courts look to the ties of a defendant to the judicial district in which the criminal charges have been brought. See <u>United States v. Rivera</u> 90 F.Supp 2d. 1338 (S.D. Florida 2000), quoting <u>United States v. Adipietro</u>, 773 F.Supp. 1270, 1273 (W.D.Mo.1991)  Mr. Coleman has been a resident of Montgomery County, Alabama since birth.  He attended school and church there as well.  He is currently self employed, though seeking other employment, and has meager resources which could not be used to finance an escape.  He is the father of 6 children and is co-breadwinner in the household.  The household will be under tremendous

6

pressure to make ends meet without the financial contribution of Mr. Coleman. The Government did not even proffer that the defendant had access to large sums of cash. As far as sentencing is concerned, the defendant has no prior record and if convicted, would likely get the minimum sentence for the offense which is 5 years not exceeding 7 years. The State of Alabama has traditionally used the "rule of thumb" method in determining bail wherein the bail amount is calculated by multiplying $1,000.00 per year of incarceration. [See Murphy v. State 807 So.2d 603 (Ala. Cr. App. 2001)] Since the punishment range in this case is no less than five years no more than forty years, Such calculation would yield a bail amount between $5,000 and $40,000.00 for the accused.

      The best indicator of what a person will do in the future is what he has done in the past. The fact of the matter is that if the defendant is truly a serious flight risk, in that his intention is to flee the jurisdiction and abscond from justice, then he simply would have fled when he was informed by the undersigned that the United States Government had a warrant for his arrest. Instead, the defendant stands on the fact that once he had been informed that there was in fact a warrant for his arrest, he made immediate arrangements with the United States Marshall to turn himself into their custody and did so at the agreed upon date and time. Such conduct is a clear indication that the defendant will obey orders of the Court and appear when instructed to do so. The defendant has never had to post bail because he has never been charged with a criminal offense other than minor traffic violations. The government offers no compelling evidence to the contrary that would warrant the detention of the defendant, short of speculation and innuendo. Moreover, Coleman's father, a lifelong resident of Montgomery, Alabama pledged his property and agreed to forfeit said property if Santo Coleman refused to appear before the court. Thus the Government failed to meet its burden on this point, and for the forgoing reasons, the statutory

presumption has been rebutted. See U.S. v. Anaya, D.N.M.2005, 376 F.Supp.2d 1261-Defendant in drug trafficking prosecution met burden of production and offered sufficient evidence to rebut the statutory presumption that he was a flight risk and endangered the community, as required to support entry of conditional order of release pending trial, where, inter alia, government supported charge primarily with transcripts it obtained through wire taps, making the evidence difficult to weigh, defendant was legal resident with ties to Mexico but presented evidence of long ties to local community, defendant ran seemingly legitimate, but marginally profitable, business, and defendant and his wife were constructing a new home and offered a $20,000.00 property bond on that land.

**C.  No Serious Risk of Obstruction of Justice**

The Government alleged that the defendant would obstruct justice in order to pad its motion for detention.  Even though the Government made this allegation in their motion for detention, the government did not address this issue at the detention hearing and failed to present any evidence on this issue, so the defendant denies the allegation.

**D. Safety of any other person in the Community**

Again, the Government failed to present any evidence on this issue so the defendant denies the allegation as contained in their motion.  The Government must prove this element by clear and convincing evidence.   See United States v. Quartermaine, 913 F.2d 910, 915-917 (11th Cir. 1990).

**II.      There are a multitude of conditions which will secure Mr. Coleman's presence at**

8

**trial and protect the safety of the community.**

Again, Mr. Coleman is not a flight risk. However, even if this court determines that Mr. Coleman presents some risk of flight, the Bail Reform Act still requires the court to attempt to impose the <u>least restrictive</u> condition or combination of conditions required to reasonably assure the appearance of the person. <u>United States v. Motamedi</u>, 767 F.2d 1403 (9th Cir. 1985). This Court did attempt to do that. **All alternatives to detention must be considered before detaining a defendant**. See <u>United States v. Ploof</u>, 851 F.2d 7, 9 (1st Cir.1988). Case law in this circumstance makes clear that there are several conditions upon which even the most dangerous defendants can be released. See, <u>e.g.</u>, <u>United States v. Ojeda Rios</u>, 846 F.2d 167, 168 (2d Cir. 1988)(per curiam)(alleged member of Los Macheteros, "a paramilitary group" advocating Puerto Rican independence, was released even though he was charged along with sixteen others in the 1983 robbery of a Wells Fargo Bank); <u>United States v. Gonzalez</u>, 675 F. Supp. 208, 211 (D.N.J. 1987)(defendants charged with conspiracy and possession with intent to distribute 25 pounds of cocaine and more than 100 grams of heroin; release of one defendant on "house arrest" and other restrictive conditions).

The following conditions certainly could easily secure his appearance:

(1) Placement in the third party custody of his father, Curtis Coleman, at his residence in Montgomery, AL;

(2) Weekly in-person reporting to the United States Pretrial Services.

(3) Secured Bond via real property;

(3) Finally, if the court deems necessary, restriction to house arrest through electronic monitoring.

9

**III.     Coleman should be allowed bail because his co-defendant is out on bail.**

The statutory presumption against Coleman is the same statutory presumption against his co-defendant, Alberto Villarreal. Villarreal is the most culpable and guilty of all the parties involved as he was caught with, and admitted to possessing 3 kilograms of cocaine. Villarreal has no ties to the community in which he is charged, yet somehow the Magistrate Judge found the he was *not* a flight risk and set some conditions that would secure his presence for trial, though the details remain under seal. According to clerk's record, Villarreal was allowed to execute an unsecured $25,000.00 bond. It is a shame, disheartening and deeply disturbing at the very least that a local resident with no prior convictions or failures to appear in *any* court could be deemed a flight risk whereas a confirmed drug-toting alien to the State of Alabama who has at least admitted to possessing 3 kilos of cocaine without a practical presumption of innocence, would not be characterized as such. As the specific details of Villarreal's release are under seal, one can only conclude that the Government declined to move for detention in exchange for Villarreal's future testimony, as no record of a motion to detain the most guilty party was not filed. Nevertheless, the Magistrate Judge could have detained Villarreal sua sponte but did not.

**IV.     Whether or not the defendant should receive bail is surmised**

If the Court believes a hearing is necessary on this motion,[3] Mr. Coleman would ask that the hearing be scheduled at the earliest possible convenience of the Court.

---

[3] Defendant does not believe the prosecution will contest the factual statements set forth.

10

**CONCLUSION**

The conclusion of the Magistrate Judge that the defendant is a flight risk and that is/are no condition(s) or combination thereof that will secure his presence at trial is clearly erroneous. Such a decision is not supported by the overwhelming facts and law which clearly illustrate otherwise. The decision is an abuse of discretion.

The Government requested a detention hearing based upon 4 reasons. A statutory presumption that the defendant was a flight risk; that the defendant was in fact a flight risk; that the defendant would obstruct justice; that the defendant was a danger to the community. "The statutory presumption merely works to shift the burden of production of evidence to the defendant. United States v. Mesher, 707 F.*Supp*. 1224, 1225 (D.Or.1989); United States v. Moore, 607 F.Supp. 489, 497 (N.D.Cal.1985). The ultimate burden of persuasion remains on the government, Mesher, 707 F.Supp. at 1225, Mesher, 707 F.Supp. at 1225, and the burden placed on the defendant to rebut the presumption is small. United States v. Dillon 938 F.2d 1412, 1416 (1st Cir. 1991)*United States v. Dillon,* 938 F.2d 1412, 1416 (1st Cir.1991) The defendant need only produce "some credible evidence forming a basis for his contention that he will appear and not pose a threat to the community in order to rebut the presumption." United States v. Thomas, 667 F.Supp. 727, 728 (D.Or.1987); *Dillon,* 938 F.2d at 1416" Quoted by U.S. v. Chen *820 F.Supp          1205          N.D.          Cal.          1992.* Outside of the objective statutory presumption that the defendant should be detained prior to trial, the Government has not proffered any evidence that the defendant would not appear before this court when summoned or that he is a danger to a particular person. Instead, it has relied on merely on the charge itself, speculation of future drug dealing and innuendo. See Chen at 1208. The defendant is a lifelong resident of Montgomery County. He has never been on bond or has

appeared when required to do so. He has strong family ties as both his parents and children are lifelong residents of Montgomery County. The charges which the defendant stands accused hinge by a thread on the un-sworn, un-corroborated testimony of a co-defendant with weak or no ties to the community and who obviously cut some deal with government agents to secure bail.

Even if the Court was of the opinion that the defendant was a flight risk and a danger to the community, the Court was still obligated to comply with 18 U.S.C. § 3142(c). None of the conditions in § 3142(c) were attempted prior to detaining the defendant, thus no reference point existed for the Magistrate Judge to reasonably conclude that no condition or combination of conditions would secure the defendant's presence at trial. The defendant testified that he did not need restrictive conditions to secure his presence at trial, as he had never been on bond or failed to appear when summoned. However he said he would submit to certain specific enumerated conditions as set out in the United States Code, if necessary. The defendant's continued detention denies him his right to counsel under the 6th Amendment and equal protection under the 14th Amendment and substantially reduces his ability to have a fair trial. Moreover, The Magistrate Judge granted bail to the most apparent guilty party in the case, Alberto Villarreal who is Hispanic and charged with the same crime as Colman (who is African-American). Villarreal also admitted to possessing the 3 kilos of cocaine. The evidence showed that Villarreal had no ties to Alabama yet the Magistrate Judge found *some* conditions which would presumably secure his presence at trial, though the specifics remain under seal.

Colman's current detention is unreasonable and unwarranted under the facts and circumstances of this case. The disparate treatment he has suffered compared to Alberto Villarreal, as it relates to bail, is fundamentally unfair, un warranted and disingenuous.

Wherefore premises considered, the defendant prays that this Court will exercise its

discretion in setting aside the Magistrates Order of Detention and re-open the detention proceeding and grant the defendant reasonable terms and conditions of release to assure his presence at trial.

Done this 6th Day of September, 2006.

                Respectfully Submitted

                ___/s/_Joe M. Reed_____
                Joe M. Reed
                Attorney for Defendant

Address of Counsel:

Faulk & Reed, LLP
524 S. Union Street
Montgomery, AL  36104
334.834.2000
334.834.2088 fax

## Certificate of Service

I hereby certify that the foregoing was filed with the Clerk of the Court and that notice will be sent by the Clerk to the Honorable Terry Moorer, Assistant United States Attorney, P.O. Box 197, Montgomery, AL  36101 by electronic mail this 6th day of September, 2006.

                __/s/ Joe M. Reed_____
                Joe M. Reed